IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SIMP McCORVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 14-0377-WS-C |
| | ) | |
| CIRCUIT COURT JUDGE JACK WEAVER, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on defendant Jack B. Weaver's Motion to Dismiss (doc. 4). The Motion has been briefed and is now ripe.[1]

**I.   Background.**

Plaintiff, Simp McCorvey ("Simp"), proceeding *pro se*, commenced this action by filing a Complaint against Jack B. Weaver, a Circuit Judge in Monroe County, Alabama; plaintiff's brother, Roderick McCorvey ("Roderick"); and the brother's attorney, Leston C. Stallworth, Jr.[2]

---

[1]   For purposes of its Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Complaint, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). Of course, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

[2]   Federal subject matter jurisdiction appears proper under 28 U.S.C. § 1331, inasmuch as McCorvey appears to be lodging federal claims against defendants. The Complaint identifies multiple constitutional provisions, and asserts that defendants' conduct was "in direct violation of Alabama law, and the United States Constitution." (Doc. 1, 3.) Given these allegations, and the liberal construction of pleadings drafted by *pro se* litigants, the Court is satisfied that a sufficient jurisdictional predicate is present. *See generally Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

According to the well-pleaded allegations of the Complaint, this action arises from a previous lawsuit that Roderick (by and through his lawyer, Stallworth) brought against Simp in Monroe County Circuit Court, in which Roderick claimed an ownership interest in certain real property in Monroe County deeded solely in Simp's name (the "Monroe County Lawsuit"). The Monroe County Lawsuit commenced back in February 2009, at which time Simp was living and working in Alaska. At some point during that litigation, Simp was transferred to Albuquerque, New Mexico, where he continues to live and work today.

Simp's geographic distance from Alabama, coupled with his *pro se* status, created certain logistical difficulties in the Monroe County Lawsuit with regard to scheduling and conducting court proceedings. The allegations of the Complaint reflect that the Monroe County Circuit Court accommodated Simp's logistical issues for quite some time; indeed, it appears that various continuances and resettings were ordered from 2010 to 2012, at Simp's behest. According to the Complaint, that all changed in 2013. On September 3, 2013, Simp alleges, he was notified for the first time that Judge Weaver had set the Monroe County Lawsuit for trial on September 11, 2013 (barely one week later), but that Simp could request a continuance if he wished. (Doc. 1, at 3.) Plaintiff alleges that he "did immediate certify mail to the Court the Plaintiff Motion, request for a Continuous [*sic*] of this case to a more reasonable trail [*sic*] date, because [Simp] was never given notice of hearing." (*Id.*) As pleaded in the Complaint, however, Judge Weaver did not grant the requested continuance, but went forward with the trial on September 11, 2013, despite his knowledge that Simp could not attend on such short notice. On this point, the Complaint states that Judge Weaver "Knew that the Plaintiff was not given Notice of the Hearing and would not be at the Hearing" (*id.*), yet he went ahead with the trial anyway.

To make matters worse, the Complaint alleges, Judge Weaver granted Roderick's motion to dismiss the jury demand and conducted a bench trial at which he himself served as finder of fact, all without Simp's knowledge or consent. Following the trial, on September 12, 2013, Judge Weaver entered a written order finding that Roderick had a one-half interest in the subject real property, and awarding Roderick $5,000 in attorney's fees and $600 in costs. Simp claims not to have received a copy of the September 12 order until October 25, 2013, by which time he says it was too late to appeal. The Complaint alleges that Simp promptly filed an appeal with the Alabama Court of Civil Appeals after receiving the September 12 order, but that his appeal was summarily rejected as untimely.

In the Complaint, Simp lays the blame for this sequence of events squarely at the feet of Judge Weaver, characterizing him as an "openly corrupt court" proceeding from a "sick desire to enrich [himself] at the Plaintiff['s] expense." (*Id.* at 1.) Simp alleges that Judge Weaver manipulated the trial date to prevent Simp from attending, and that he "made sure that [Simp] would not receive the order" deciding the case until after the time for appeal had expired. (*Id.* at 3.) The Complaint repeatedly utilizes the adjective "corrupt" to describe Judge Weaver.

Based on these allegations, Simp's Complaint sets forth demands for the following relief: (i) rescission/vacatur of the September 12, 2013 order; (ii) an award of $100,000 to Simp "for the loss of his Oklahoma home that he lose [*sic*] due to the cost of the knowing false complaint;" and (iii) "compensatory damages in the amount of $300,000.00." (Doc. 1, at 5.)

Judge Weaver now moves to dismiss all claims against him pursuant to Rule 12(b)(6), Fed.R.Civ.P., on grounds of judicial immunity and the *Rooker-Feldman* doctrine. Simp opposes the request.

**II.    Analysis.**

   *A.    Judicial Immunity.*

As an initial matter, Judge Weaver invokes the doctrine of judicial immunity. It is hornbook law that "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (citation and internal quotation marks omitted); *see also Dykes v. Hosemann*, 776 F.2d 942, 944 (11th Cir. 1985) ("Since the seventeenth century, common law has immunized judges from suit for judicial acts within the jurisdiction of the court."). "The rationale is that judges should not have to fear that unsatisfied litigants will hound them with litigation." *Weinstein v. City of North Bay Village*, 977 F. Supp.2d 1271, 1281-82 (S.D. Fla. 2013) (citation and internal marks omitted).

In applying the test for judicial immunity, "the first question is whether the judge dealt with the plaintiff in his judicial capacity." *William B. Cashion Nevada Spendthrift Trust v. Vance*, 552 Fed.Appx. 884, 886 (11th Cir. Jan. 13, 2014). "If he did act in his judicial capacity, then we ask whether the judge acted in the clear absence of all jurisdiction." *Id.* If the judge acted in his judicial capacity, and if he did not act in the clear absence of all jurisdiction, then he is entitled to judicial immunity, as a matter of law. *See Washington Mut. Bank v. Bush*, 220 Fed.Appx. 974, 975 (11th Cir. Mar. 23, 2007) ("Judicial immunity applies when (1) the judge

dealt with the plaintiff in his judicial capacity and (2) the judge did not act in the clear absence of all jurisdiction.") (citation and internal marks omitted).

Beginning with step one, the Court readily concludes that Judge Weaver's challenged actions and rulings were all taken in his judicial capacity. "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley*, 437 F.3d at 1070. Here, Simp's allegations in the Complaint establish that Judge Weaver, a Monroe County Circuit Judge, was the assigned judicial officer in a civil action between Roderick and Simp pending in Monroe County Circuit Court. Plaintiff contends that Judge Weaver's rulings in that state-court action were unlawful and unconstitutional, but the fact remains that a judge's rulings in a case pending before that judge are the embodiment of "a normal judicial function." Moreover, Simp complains about events occurring in Judge Weaver's chambers or his courtroom (*i.e.*, the trial and related rulings), relating to a case pending before him. Under any reasonable application of the concept, Judge Weaver must be deemed to have been acting in his judicial capacity.

Because the Complaint's allegations confirm that Judge Weaver was acting in his judicial capacity, the analysis proceeds to step two, which provides that this defendant is entitled to judicial immunity unless he acted in the clear absence of all jurisdiction. To be clear, "[j]udges do not lose their judicial immunity even if they act in absence of jurisdiction as long as they do not have knowledge that they lack jurisdiction or act in the face of clearly valid statutes or case law expressly depriving them of jurisdiction." *Franklin v. Arbor Station, LLC*, 549 Fed.Appx. 831, 834 (11th Cir. Sept. 27, 2013) (citation and internal marks omitted). Simp neither alleges that Judge Weaver knew he lacked jurisdiction, nor identifies any Alabama statute or case law that clearly deprived him of jurisdiction to enter rulings in the Monroe County Lawsuit.$^{3}$ There

---

$^{3}$ At best, Simp insinuates that Judge Weaver overstepped his bounds when he conducted the Monroe County Lawsuit as a bench trial, rather than as a jury trial. Simp is wrong. The Alabama Rules of Civil Procedure specify that "[t]he failure to appear, in person or by counsel, at the trial is a waiver of trial by jury." Rule 38(d), Ala.R.Civ.P. Under that rule, then, Judge Weaver appears to have acted well within his authority (and, more to the point, did not act in the clear absence of all jurisdiction) by proceeding with a bench trial when Simp did not appear for trial and Roderick moved to dismiss the jury demand. In short, this circumstance (Continued)

being no facts or circumstances presented in the Complaint or in Simp's brief that might support a determination that Judge Weaver acted in the clear absence of all jurisdiction, the Court concludes that the doctrine of judicial immunity applies. Accordingly, Judge Weaver is absolutely immune from the claims asserted by Simp.

Of course, the Court recognizes that the Complaint is sprinkled liberally with assertions that Judge Weaver acted corruptly or out of a desire for personal enrichment.[4] Those allegations in no way alter the foregoing analysis. Binding authorities unequivocally establish that judicial immunity "applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *see also Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction."); *Wilson v. Bush*, 196 Fed.Appx. 796, 799 (11th Cir. Sept. 8, 2006) ("Wilson's claims are based on allegations that the judges acted corruptly and conspired with Bush and not that they acted in the absence of all jurisdiction. The district court properly found that judicial immunity shields them from suit."); *Bush v. Washington Mut. Bank*, 177 Fed.Appx. 16, 18 (11th Cir. Apr. 11, 2006) ("judicial immunity prevents a civil suit against a federal judge accused of taking bribes," and aggrieved party's remedies are to appeal or to file judicial complaint).

In short, the doctrine of judicial immunity bars all of Simp's claims asserted herein against Judge Weaver.

### B. *Rooker-Feldman.*

As a separate and independent ground for dismissal, Judge Weaver invokes the *Rooker-Feldman* doctrine as to Simp's claims for rescission and vacatur of the September 12, 2013 order and judgment in the Monroe County Lawsuit.

---

in no way eliminated or jeopardized Judge Weaver's entitlement to judicial immunity for rulings in the Monroe County Lawsuit.

[4] Simp hammers the point home in his brief as follows: "The plaintiff believes the well known rumor that the judges in Corrupt Monroeville court system had for some time now awarded attorneys with outrageous awards with the intent to Met [*sic*] up later in some dark alley to divide the award." (Doc. 10, at 8.)

The *Rooker-Feldman* doctrine precludes "lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330 (11th Cir. 2010) (citations and internal quotation marks omitted); *see also Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009) ("Generally speaking, the *Rooker-Feldman* doctrine bars federal district courts from reviewing state court decisions."). "This is because appellate authority over final state-court decisions rests with the Supreme Court of the United States." *Carter v. Killingsworth*, 540 Fed.Appx. 912, 914 (11th Cir. Sept. 6, 2013).[5] Simply put, "[t]he doctrine bars the losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Brown*, 611 F.3d at 1330 (citation and internal quotation marks omitted).[6]

The Eleventh Circuit has utilized a four-factor test, concluding that federal jurisdiction is barred under *Rooker-Feldman* principles where: "(1) the party in federal court is the same as the party in state court;" "(2) the prior state court ruling was a final or conclusive judgment on the merits;" "(3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding;" and "(4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." *Nicholson*, 558 F.3d at 1272 (citations omitted).

This case calls for a paradigmatic application of the *Rooker-Feldman* doctrine. The Complaint leaves no doubt that Simp is effectively asking this federal district court to act as a *de facto* appellate court, reviewing and reversing Judge Weaver's rulings in the Monroe County

---

[5] *See also Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) ("The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.").

[6] "We reject, from the outset, the use of § 1983 as a device for collateral review of state court judgments." *Sibley*, 437 F.3d at 1070. Insofar as Simp is asking this Court "to fix an erroneous state court judgment," his request is something that the undersigned "could not do." *Id.* at 1070 n.3.

Lawsuit.[7] That is precisely the sort of jurisdictional overreach that *Rooker-Feldman* principles forbid. Here, the party in federal court is the same as that in the Monroe County Lawsuit. Judge Weaver's ruling of September 12, 2013 (which Simp asks this Court to set aside) is plainly a final or conclusive judgment on the merits. Simp had ample opportunity to raise any federal claims or issues he wished in the Monroe County Lawsuit at any time during its four-year lifespan; indeed, by his own admission, he filed numerous motions and an appeal in state court, and identifies no impediment to his ability to raise any federal claims in those state proceedings. Furthermore, the issues Simp presents here (*i.e.*, that Judge Weaver's rulings were the product of corruption and should be vacated) are inextricably intertwined with those rulings themselves. *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) ("A claim is inextricably intertwined if it would effectively nullify the state court judgment ….") (citation and internal quotation marks omitted).

*Rooker-Feldman* is a narrow doctrine, but this case is a textbook example of the kind of circumstance it was designed to cover. Simp is a state-court loser who claims to have been injured by the manner in which the state-court judgment was reached prior to the commencement of these proceedings, and who now wants this Court to review and reject the state court's judgment concerning ownership of the subject real property. The *Rooker-Feldman* doctrine deprives this Court of jurisdiction to do so. *See Casale*, 558 F.3d at 1261 (*Rooker-Feldman* "continues to apply with full force to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

**III.  Conclusion.**

For all of the foregoing reasons, defendant Judge Jack B. Weaver's Motion to Dismiss (doc. 4) is **granted**. Simp's claims against this defendant, a state-court judge acting in his judicial capacity as to matters in which there was not a clear absence of jurisdiction, are barred by principles of judicial immunity. Moreover, to the extent that Simp's claims against this defendant call for federal court review and reversal of Judge Weaver's rulings in the underlying

---

[7]  Indeed, in the *ad damnum* clause of the Complaint, Simp requests that the undersigned "Grant [him] relief from this Corrupt Judge Jack B. Weaver unlawful order by resending [*sic*] / setting aside the Alabama secret order giving away the plaintiff Alabama Property [*sic*]." (Doc. 1, at 5.)

state-court litigation, the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction to do so. Accordingly, plaintiff's claims against defendant Weaver are **dismissed with prejudice**. The Clerk of Court is directed to terminate Judge Jack B. Weaver as a party defendant to this litigation. This action will proceed as to defendants Leston Stallworth and Roderick McCorvey.

DONE and ORDERED this 21st day of October, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE