# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SIMP McCORVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 14-0377-WS-C |
| ) | |
| CIRCUIT COURT JUDGE JACK ) | |
| WEAVER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on a filing styled "Plaintiff's Motion for Reconsiration [*sic*] to the Court Un-Lawfully [*sic*] Granting the Defendant Jack B. Weaver Immunity" (doc. 15).

Plaintiff, Simp McCorvey, who is proceeding *pro se*, commenced this lawsuit against multiple defendants, including Jack B. Weaver, a Circuit Judge in Monroe County, Alabama. In his Complaint, McCorvey sharply criticized Judge Weaver's handling of a state-court matter in which McCorvey was a litigant. Specifically, McCorvey alleged that Judge Weaver had failed to send him written notice of the trial setting, that McCorvey (who resides out of state) had learned of the trial date too late to arrange his attendance, that Judge Weaver refused to grant McCorvey a continuance and conducted the trial without him, that Judge Weaver granted the other party's request to dismiss the jury demand and proceed as a bench trial, that Judge Weaver ruled against McCorvey, and that Judge Weaver delayed sending written notice of his ruling until it was too late for McCorvey to appeal. The Complaint repeatedly brands Judge Weaver as "corrupt" and suggests that his conduct was motivated by a desire for personal financial gain via the other litigant. In terms of relief sought, the Complaint requests that Judge Weaver's ruling be rescinded and that McCorvey be awarded monetary damages totaling $400,000.

On October 21, 2014, the undersigned entered an Order (doc. 11) granting Judge Weaver's Motion to Dismiss, on grounds of both judicial immunity and the *Rooker-Feldman* doctrine. With regard to the former, the October 21 Order explained that Judge Weaver was

insulated from this lawsuit by absolute judicial immunity. In particular, the October 21 Order found that Judge Weaver's challenged acts and omissions were undertaken in his judicial capacity, inasmuch as he was clearly performing a normal judicial function (*i.e.*, hearing and deciding a case assigned to him as a Monroe County Circuit Judge), and the subject events happened in his chambers or courtroom. The October 21 Order further explained that the Complaint was devoid of factual allegations supporting an inference that Judge Weaver was acting in the clear absence of all jurisdiction; therefore, both prongs of the judicial immunity doctrine were satisfied. Alternatively, the October 21 Order concluded that McCorvey's claims against Judge Weaver were barred by the *Rooker-Feldman* doctrine, inasmuch as McCorvey is a state-court loser seeking what in substance would be appellate review of a state-court judgment rendered before these federal proceedings commenced and inviting this Court to reject such a judgment based on alleged constitutional infirmities.

Now, McCorvey comes forward and requests reconsideration of the October 21 Order on the following grounds: (i) the October 21 Order wrongfully "blames the plaintiff" for his misfortune; (ii) the October 21 Order is riddled with "knowing" and "willful" false statements of fact; (iii) the absence of notice received by McCorvey negates judicial immunity for Judge Weaver; (iv) principles of prosecutorial immunity require a different result; and (v) lack of notice to plaintiff precludes dismissal pursuant to the *Rooker-Feldman* doctrine.

As an initial matter, McCorvey's Motion for Reconsideration fails to identify or comport with the stringent legal standard governing such motions. Although McCorvey does not acknowledge it, his Motion appears to have been filed pursuant to Rule 59(e), Fed.R.Civ.P. Under that rule, a dissatisfied federal litigant is not entitled to reconsideration of anything and everything, merely because he disagrees with a court's ruling or thought of something else to say. To the contrary, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (citation and internal marks omitted); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (similar). Authority is legion for the proposition that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5,

128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted).[1] Rule 59(e) motions do not afford an unsuccessful litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser." *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012).[2] "They are neither appeal substitutes nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Id.* McCorvey's Motion consists in large part of arguments that either (i) were considered and rejected previously, or (ii) could have been raised previously but were not. Either way, the Motion for Reconsideration falls outside the narrow parameters in which Rule 59(e) relief may be appropriate.

Even if the Motion were proper, it would fail. The five "errors" on which McCorvey relies as the basis for his Rule 59(e) Motion are the product of either imagined slights or McCorvey's fundamental misunderstanding of the law. First, plaintiff repeatedly criticizes the October 21 Order for "wrongly blaming the Plaintiff" for the events occurring in state court. (Doc. 15, at 1-2.) The October 21 Order does no such thing. Nowhere does that Order state,

---

[1] *See also Smith v. Ocwen Financial*, 2012 WL 3758378, *2 (11th Cir. Aug. 30, 2012) ("A motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment.") (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (similar); *Kight v. IPD Printing & Distributing, Inc.*, 2011 WL 2015055, *1 (11th Cir. May 24, 2011) (motion for reconsideration properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment"); *Morton v. Astrue*, 2010 WL 2130613, *3 (11th Cir. May 27, 2010) ("In his motion to alter or amend judgment, … Morton merely attempted to reargue factual issues previously decided by the district court. The district court therefore did not abuse its discretion in denying the motion."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider … do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

[2] *See also Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong," but finding that they are "an extraordinary remedy" that must be "employed sparingly") (citations omitted); *Garrett v. Stanton*, 2010 WL 320492, *3 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license … to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper.").

opine, or insinuate that it was McCorvey's fault he allegedly did not receive timely notice of the state court trial.[3]

Second, McCorvey suggests that the October 21 Order reflects judicial bias against him, as he contends that this Court engaged in "knowingly false statements" and "willful mis-stating the facts" in that Order. (Doc. 15, at 2, 3, 4, 13.) Plaintiff even asserts that the October 21 Order was "based solely on the Judge's emotions," rather than the law. (*Id.* at 12.) Plaintiff's reckless accusations of partiality have no basis in reality. The undersigned is well versed in the legal standard for judicial disqualification under 28 U.S.C. § 455 and knows of no facts or circumstances that might reasonably call into question his impartiality in this matter. More to the point, each of the alleged "false statements" that McCorvey cites from the October 21 Order are, in fact, well grounded in the pleadings and court documents.[4]

Third, McCorvey maintains that it was error for the October 21 Order to dismiss Judge Weaver on grounds of judicial immunity because Judge Weaver had provided "no-Notice to the Plaintiff that this defendant would be the New Judge, No – Notice of Hearing, No-Notice to the

---

[3]  The flashpoint of plaintiff's dissatisfaction appears to be a statement in the October 21 Order that "Simp's geographic distance from Alabama, coupled with his *pro se* status, created certain logistical difficulties in the Monroe County Lawsuit with regard to scheduling and conducting court proceedings." (Doc. 11, at 2.) Plaintiff's reliance on this statement as a ground for his Motion to Reconsider is misplaced because (i) nothing therein declares or implies that McCorvey is to blame for not receiving notice or that out-of-state litigants are entitled to lesser legal protection than in-state litigants; and (ii) the statement itself is a fair and accurate characterization of facts contained in pleadings filed in this case, as well as in the underlying state-court proceedings, of which judicial notice may properly be taken.

[4]  For example, plaintiff characterizes as a "willful misstatement" the October 21 Order's recitation that "[o]n September 3, 2013, Simp alleges, he was notified for the first time that Judge Weaver had set the Monroe County Lawsuit for trial on September 11, 2013 (barely one week later), but that Simp could request a continuance if he wished." (Doc. 11, at 3.) Plaintiff now blusters at length that this statement is false, and that this Court willfully distorted the truth in the October 21 Order. (Doc. 15, at 3.) A glance at the Complaint reveals the frivolity of this objection. In McCorvey's own Complaint, he recounted a telephone conversation he had with Judge Weaver's staff on September 3, 2013, to-wit: "The Judge Assistant came back to the phone and stated that the Judge had stated that there was a trial set for 09/11/2013 and that the plaintiff had to request a continuous [*sic*] for a more reasonable date." (Doc. 1, at 3.) Thus, what McCorvey now slams as a willful misstatement of the truth is actually a fair paraphrasing of his own allegations in the Complaint. His other accusations of knowing falsehoods in the October 21 Order are equally baseless.

Plaintiff … that this Defendant was be starting at 9/11/2013 at 7:00am acting as a Judge and would act in an official Judicial Capacity." (Doc. 15, at 4.) In McCorvey's view, the lack of notice issue absolutely forecloses Judge Weaver from claiming judicial immunity. (*Id.* at 12.) Once again, plaintiff is wrong.

"Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). The only facts before this Court are that Judge Weaver was the assigned state-court judge presiding over the Monroe County Circuit Court action, that McCorvey is complaining about events that occurred in Judge Weaver's chambers or courtroom, and that the entire thrust of this lawsuit is McCorvey's dissatisfaction with Judge Weaver's handling of a case assigned to him and his unfavorable rulings in such case. These circumstances are a textbook example of those in which judicial immunity applies. For purposes of this immunity, it does not make any difference whether Judge Weaver gave McCorvey notice or not, whether Judge Weaver was motivated by corrupt or improper objectives, whether Judge Weaver acted in violation of the Constitution, and so on. *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986) ("Judicial immunity is an absolute immunity; it applies even where a judge acts maliciously."). Judicial immunity applies.[5]

---

[5] In a further attempt to bolster this objection, McCorvey states, "Case Law makes it clear that the Defendant did not nor never had any jurisdiction over this matter." (Doc. 15, at 12.) Plaintiff identifies no law that might support the proposition that a state-court judge would lack jurisdiction to enter rulings in these circumstances. More importantly, the pleadings and state court record confirm that Judge Weaver was not acting in the "clear absence of all jurisdiction;" therefore, he is entitled to judicial immunity for actions taken in his judicial capacity. Plaintiff's arguments to the contrary are devoid of legal or factual support. McCorvey also devotes more than five pages of his Motion to a discussion of due process principles, apparently on the premise that judicial immunity does not apply to due process violations. (Doc. 15, at 7-12.) McCorvey is mistaken. *See, e.g., Rolleston v. Eldridge*, 848 F.2d 163, 164-65 (11th Cir. 1988) (affirming dismissal of § 1983 claims against judge, where plaintiff claimed that
(Continued)

Fourth, McCorvey devotes several pages of his Motion for Reconsideration to a discussion of prosecutorial immunity. (*See* doc. 15, at 4-6.) Prosecutorial immunity has no application here. Judge Weaver is a judge, not a prosecutor; therefore, McCorvey's claims against him are properly analyzed through the lens of judicial immunity, not prosecutorial immunity. To the extent that McCorvey seeks reconsideration of the October 21 Order based on principles of prosecutorial immunity, then, his Motion is frivolous.

Fifth, McCorvey assigns error to the October 21 Order's alternate holding that dismissal of the claims against Judge Weaver was appropriate under the *Rooker-Feldman* doctrine. In doing so, McCorvey reasons that the lack of notice and the paucity of state-court rulings during the pendency of that case foreclose application of that doctrine. (Doc. 15, at 13.) However, the law is crystal clear that *Rooker-Feldman* "continues to apply with full force to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009); *see also Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013) ("The *Rooker-Feldman* doctrine states that federal district courts have no authority to review final judgments of a state court.") (citations omitted). That is precisely the case here; therefore, McCorvey's claims against Judge Weaver (wherein he seeks to have this Court review and overturn Judge Weaver's rulings in the underlying state court litigation) were properly dismissed via *Rooker-Feldman* principles.[6]

---

judge's rulings in underlying case "violated Rolleston's constitutional rights to due process and equal protection"); *Frone v. City of Riverdale*, 521 Fed.Appx. 789, 791 (11th Cir. June 5, 2013) (affirming dismissal of plaintiff's claims against judge on theories of due process and equal protection violations, because judge was entitled to absolute judicial immunity).

[6] Plaintiff's position is not strengthened by his insistence that the October 21 Order erred in finding that McCorvey "had ample opportunity to raise any federal claims or issues he wished in the Monroe County Lawsuit at any time during its four-year lifespan." (Doc. 21, at 7.) Plaintiff's objection here is frivolous. Most notably, his Complaint documents numerous filings that he made and was permitted to make in the state court action, and on appeal. (*See* doc. 1, at 2-4.) From plaintiff's pleadings, it is clear that he had a full and fair opportunity to raise any federal issues he wanted in the state-court litigation. That he chose not to do so, or that the state courts ruled against him on those federal issues, does not entitle him to use the federal courts as a second layer of appeals from unfavorable state-court rulings.

For all of the foregoing reasons, plaintiff's Motion for Reconsideration (doc. 15) is **denied**.

DONE and ORDERED this 14th day of November, 2014.

                                                  s/ WILLIAM H. STEELE
                                                  CHIEF UNITED STATES DISTRICT JUDGE